AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>ANTHONY KENNETH SMOKES<br><br>Defendant(s) | Case No. 3:25-mj-1508-LLL |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **September 8, 2025** in the county of **Duval** in the **Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine |

This criminal complaint is based on these facts:
See affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Clayburne Bridge, Task Force Officer - ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: **November 5, 2025**

_____
Judge's signature

City and state: Jacksonville, FL

Laura Lothman Lambert, United States Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Clayburne Bridge, being a duly sworn, depose and state that:

## INTRODUCTION

1. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), currently assigned to the Jacksonville, Florida Field Office. I have been employed with ATF since June 2024. I am a certified police officer with the Jacksonville Sheriff's Office (JSO) and a graduate of the Northeast Florida Criminal Justice Training and Education Center. My duties and responsibilities include investigating violations of federal firearms law and the Controlled Substances Act. I have successfully completed investigative training courses in the field of narcotic investigations, gang investigations, and the unlawful possession, distribution, and use of firearms. Since becoming an ATF TFO, I have conducted or participated in numerous narcotics and firearms related investigations, including but not limited to, firearms trafficking, armed distribution of narcotics, and unlawful possession of firearms by prohibited persons. During my employment with ATF, I have conducted or participated in many investigations related to the unlawful possession of firearms in violation of Titles 18 and 26 of the United States Code.

2. The information contained in this affidavit is based upon my own observations, information relayed to me by other members of federal and local law enforcement, and my review of records, reports, documents, and physical evidence obtained during the investigation described below.

3. The information provided in this affidavit does not include each and every fact known to me, but rather, information sufficient to establish probable cause for the requested criminal complaint.

## REQUESTED CRIMINAL COMPLAINT

4. Based on the information in this affidavit, I request that a criminal complaint be issued for Anthony Kenneth SMOKES for violating the provisions of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon and 21 U.S.C. § 841(a)(1), possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine.

## INVESTIGATIVE ACTIVITY

5. On September 8, 2025, JSO Community Problem Response Unit (CPRU) detectives and I were attempting to locate SMOKES, who I knew to have an active state felony arrest warrant for sale, manufacture, or delivery of fentanyl within 1000 feet of a convenience business and for trafficking in methamphetamine. To that end, CPR detectives and I were conducting surveillance at the Tamaya Apartments located at 3050 Tamaya Boulevard, Apartment 1204, in Jacksonville, Florida. Electronic monitoring authorized by the state revealed to myself and other law enforcement investigators that SMOKES was, prior to the operation, recently located near the Tamaya Apartments.

6. As part of my investigation in this matter, I reviewed the criminal background of SMOKES and learned that SMOKES has multiple felony convictions, including convictions for Felony Fleeing or Attempting to Elude (2004), Sale or

Delivery of Cocaine (2006), Possession of Cocaine (2010), Possession of Cocaine (2010), Sale or Delivery of Cocaine (2020), and Trafficking in Cocaine, Sale, Manufacture, or Delivery of Cocaine, Possession of a Firearm by a Convicted Felon, and Possession of More than 20 Grams of Marijuana (2020).

7. Based on previous surveillance operations, investigators knew that SMOKES was operating a black Nissan Altima, bearing Florida tag CQ80YY.

8. I spoke to JSO Detective Nicolini and he told me that he applied for and received a state warrant to collect the data from a cellular phone associated with SMOKES. Thus, prior to the beginning of the surveillance on September 8, 2025, I also knew that a cellular phone associated with SMOKES was located near Tamaya Apartments, and had been for several days, based on location data received by Detective Nicolini.

9. During my surveillance on September 8, 2025, I was notified that the cellular phone associated with SMOKES was moving towards the apartment complex, and shortly afterward, I observed a black Nissan Altima, bearing Florida tag CQ80YY, began driving towards a closed garage door, which was confirmed to belong to apartment 1204. As the black Altima approached the garage, the garage door was activated and began to lift open. The black Altima pulled into the garage, which was attached to the building. I then exited my unmarked vehicle and began walking towards the open garage. I observed SMOKES reemerge from the apartment through the opened garage door and return to the rear of the black Altima. Once the vehicle pulled into the garage, the garage door was never closed and remained open for the

duration of the investigation. I would note that the fact that the garage opened for the Altima indicates that SMOKES, the driver of the black Altima, opened the garage door, indicating his use and possession of the garage and location because one does not possess a garage door opener for a residence one does not have a relationship to.

10. Detective Lackie, JSO Sergent McEwan, and I had a valid state of Florida arrest warrant and approached the garage on foot while wearing our issued JSO uniforms. SMOKES was given loud verbal demands to get on the ground and show his hands. I observed SMOKES begin to look behind him and start walking backwards as if he was going to run back into the apartment in an attempt to escape.

11. Other members of law enforcement and I continued to give SMOKES commands to get on the ground, and yet, SMOKES failed to comply with the commands. Detective Lackie drew his issued conducted energy weapon (CEW) and turned it on, displaying a red dot on SMOKES person.[1] SMOKES then went to the ground inside the garage. The detectives and I entered the garage to arrest SMOKES and prevent SMOKES from being able to reenter the residence, enter the vehicle in attempt to flee, or retrieve a firearm. SMOKES was subsequently arrested without further incident. While taking SMOKES into custody, the detectives and I noted a strong odor of fresh marijuana that appeared to be coming from both within the parked black Altima and from the open door to the residence. The smell of fresh marijuana

---

[1] This was done per JSO policy and was used in order to gain "red dot compliance". The idea behind the policy is to get cooperation without actual use of force.

4

was so strong that I believe that I was able to smell the odor approximately ten feet from the opening of the garage.

12. Detective Lackie and I searched SMOKES incident to arrest and recovered approximately $1,967 in cash, composed of multiple small denomination bills, as well as his issued Florida Identification. I know based on my training and experience that the possession of currency in that configuration was consistent with the street-level sale of drugs.

13. SMOKES told Detective Lackie that he had three cell phones inside of the black Nissan; SMOKES gave Detective Lackie permission to retrieve the phones from within the vehicle. While retrieving SMOKES' cell phones, Detective Lackie observed marijuana laying in plain view within an open space under the infotainment center, located on the center dash of the vehicle. The marijuana was contained within a clear plastic baggie. During the investigation, SMOKES said that he did not possess a valid Florida medical marijuana card.

14. Other JSO detectives on scene told me that while they were walking into the garage, they observed a black drum magazine containing live ammunition in an opened bag of pet food, near the driver's side door or the Nissan Altima. Fearful that there was another individual inside of the residence with a firearm, the detectives and I conducted a protective sweep of the residence to ensure that there were no other individuals present within the residence. No other individuals were found, and the

residence was secured while Detective Prescott applied for and was granted a state search warrant for the residence.[2]

15. During the search of SMOKES's residence, pursuant to the search warrant, detectives located approximately $44,981 in cash and various narcotics, including more than 5,000 grams of suspected methamphetamine and more than 150 grams of suspected marijuana. The large quantity of suspected methamphetamine and U.S. currency was found in the closet of the furnished bedroom. The other drugs noted were found scattered between the kitchen, the furnished bedroom, and the furnished bedroom's closet. The suspected methamphetamine was tested at the JSO property room using TruNarc, yielding a positive result for methamphetamine.

16. An empty Walther pistol case and a Walther, model PDP, 9mm pistol were in different locations in the furnished bedroom.[3] JSO detectives located the pistol next to a bank card, which listed SMOKES as the user. Based on open source research, I know that Walther firearms are not manufactured in the State of Florida.

17. SMOKES was arrested on scene and transported to the JSO Crime Gun Intelligence Center for an interview with detectives, which was audio and video recorded. I have reviewed that interview and learned SMOKES was read his *Miranda* warnings and agreed to speak with the detectives. SMOKES claimed he was in a complicated relationship with A.L., which, in context, I understood to mean that they

---

[2] This was an apartment with attached garage, and one could enter into the apartment from the interior garage door. Also, the apartment also had a standard front door from a breezeway.

[3] The second bedroom in the residence was unfurnished.

were boyfriend and girlfriend who had relationship troubles. I know A.L. is the registered owner of the black Altima that SMOKES was driving and is also the listed customer for Jacksonville Electric Authority account for of apartment where SMOKES was arrested. While SMOKES initially denied knowledge of any drugs inside the residence, he later added that he had marijuana in the vehicle he was driving, and that the marijuana inside the residence was for SMOKES to use. When asked about the firearm located during the search, SMOKES stated that he had knowledge of the firearm in the residence and stated, in sum and substance, that everyone has a firearm to protect themselves, convicted felon or not, indicating to me that he knowingly possessed the firearm. Smokes later asked detectives how they were able to get a residential search warrant. The detectives explained the probable cause used to obtain the search warrant and added that the magazine with live rounds was located in the garage and that he was a convicted felon. Smokes responded, in sum and substance you couldn't hardly see that, indicating his familiarity with the residence. After the interview concluded, SMOKES was transported to the Duval County Jail without incident.

## CONCLUSION

18.     Based on the foregoing, there is probable cause to believe that on or about September 8, 2025, SMOKES unlawfully possessed a firearm in or affecting interstate commerce as a convicted felon and possessed 500 grams or more of a

mixture and substance containing methamphetamine with the intent to distribute the same. I therefore request that this Court issue the requested complaint.

Respectfully submitted,

_____
Clayburne Bridge
Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn before me on this 4th day of October, 2025.

_____
LAURA LOTHMAN LAMBERT
United States Magistrate Judge

8